NOTICE
This Order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (4th) 241473-U

NOS. 4-24-1473, 4-24-1474 cons.

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
April 1, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* E.A., a Minor | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Winnebago County |
|      Petitioner-Appellee, | ) | No. 22JA150 |
|      v.     (No. 4-24-1473) | ) | |
| Rebecca G., | ) | |
|      Respondent-Appellant). | ) | |
| ------------------------------------------------------------------- | ) | |
| *In re* P.A., a Minor | ) | No. 22JA429 |
| | ) | |
| (The People of the State of Illinois, | ) | |
|      Petitioner-Appellee, | ) | |
|      v.     (No. 4-24-1474) | ) | Honorable |
| Rebecca G., | ) | Erin B. Buhl, |
|      Respondent-Appellant). | ) | Judge Presiding. |

JUSTICE KNECHT delivered the judgment of the court.
Presiding Justice Harris and Justice Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The appellate court granted appellate counsel's motion to withdraw and affirmed the trial court's judgments, concluding no issue of arguable merit could be raised on appeal.

¶ 2    Respondent mother, Rebecca G., appeals the trial court's judgments terminating her parental rights to her daughters, E.A. (born September 2020) and P.A. (born September 2022). On appeal, respondent's appellate counsel moves to withdraw pursuant to *Anders v. California*, 386 U.S. 738 (1967), on the ground no issue of arguable merit can be raised. For the reasons that follow, we grant appellate counsel's motion and affirm the court's judgments.

¶ 3                                    I. BACKGROUND

¶ 4        The parental rights of the minors' father were also terminated during the proceedings below. He is not, however, a party to this appeal.

¶ 5                                 A. Neglect and Wardship

¶ 6        In April 2022, the State filed a petition for adjudication of wardship, alleging E.A. was neglected in that she was subject to an environment injurious to her welfare pursuant to section 2-3(1)(a)-(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(a)-(b) (West 2022)). In support of the allegation, the State cited unsanitary conditions in E.A.'s home and domestic violence committed by respondent against the minors' father while E.A. was present. That same month, E.A. was placed in the temporary custody of the Illinois Department of Children and Family Services (DCFS).

¶ 7        In July 2022, respondent and the minors' father stipulated to the neglect allegation based upon unsanitary home conditions but agreed to engage in recommended services with respect to all the neglect allegations. Thereafter, the trial court adjudicated E.A. neglected and made her a ward of the court. The court further found respondent and the minors' father were unfit or unable to care for E.A. and placed custody and guardianship of her with DCFS. The court ordered respondent to cooperate with any recommended services.

¶ 8        In September 2022, the State filed a petition for adjudication of wardship, alleging P.A. was neglected in that she was subject to an environment injurious to her welfare pursuant to section 2-3(1)(b) of the Juvenile Court Act (*id.* § 2-3(1)(b)). In support of the allegation, the State cited the failure of respondent and the minors' father to correct the conditions which led to E.A.'s removal from the home. That same month, P.A. was placed in the temporary custody of DCFS.

¶ 9        In December 2022, respondent and the minors' father stipulated to the neglect

allegation concerning P.A. Thereafter, the trial court adjudicated P.A. neglected and made her a ward of the court. The court further found respondent and the minors' father were unfit or unable to care for P.A. and placed custody and guardianship of her with DCFS. The court again ordered respondent to cooperate with any recommended services.

¶ 10                          B. Motions to Terminate Parental Rights

¶ 11          In July 2024, the State filed motions to terminate respondent's parental rights to the minors. In the motions, as later amended, the State alleged respondent was an unfit parent in that she failed to (1) maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2022)); (2) make reasonable efforts to correct the conditions that caused the minors to be removed from her care during certain nine-month periods following the minors' adjudications of neglected, namely, June 26, 2023, through March 26, 2024, and October 9, 2023, through July 9, 2024 (*id.* § 1(D)(m)(i)); and (3) make reasonable progress toward the return of the minors to her care during certain nine-month periods following the minors' adjudications of neglect, namely, June 26, 2023, through March 26, 2024, and October 9, 2023, through July 9, 2024 (*id.* § 1(D)(m)(ii)). The State further alleged it was in the minors' best interest to terminate respondent's parental rights and appoint DCFS as their guardian, with the power to consent to adoption.

¶ 12                                    C. Fitness Hearing

¶ 13          In September 2024, the trial court held a fitness hearing. The court took judicial notice of various pleadings and orders, received multiple exhibits, and heard testimony from a case supervisor. The following is gleaned from the evidence as it relates to respondent.

¶ 14          It was recommended respondent (1) complete a domestic-violence assessment and comply with any recommended treatment, (2) complete a mental-health assessment and comply

with any recommended treatment, and (3) complete a parenting education course. It was also recommended respondent obtain suitable housing. Respondent was informed of the importance of satisfying the recommended services.

¶ 15 In late 2022 and early 2023, respondent was engaged in the recommended services. She completed a domestic-violence assessment, which resulted in a recommendation for treatment through a 27-week partner abuse intervention program. She completed a mental-health assessment, which resulted in a recommendation for treatment through counseling. Respondent began the partner abuse intervention program, counseling, and a parenting education course.

¶ 16 In February 2023, respondent was unsuccessfully discharged from the partner abuse intervention program and the parenting education course and arrested on a charge of domestic battery involving the minors' father. In March 2023, respondent was arrested on another charge of domestic battery involving the minors' father. Respondent ultimately pleaded guilty to the charges, and her conduct led to her being incarcerated at several points throughout 2023. While incarcerated, respondent completed various courses. The courses did not, however, satisfy the service recommendations, and her incarceration impeded her reengagement with the recommended services.

¶ 17 In 2024, respondent, despite the existence of a no-contact order, continued contact with the minors' father and reported living with him in January of that year. They continued to have domestic issues that involved police contact. In April 2024, respondent completed a psychological evaluation and a parenting capacity assessment, and she was expected to reengage in counseling in May 2024. It was recommended respondent reengage in counseling before reengaging in a parenting education course. Around July 2024, respondent completed another domestic-violence assessment, which again resulted in a recommendation for treatment through a

27-week partner abuse intervention program.

¶ 18    When respondent was not incarcerated, she would attend weekly visits with the minors. She demonstrated appropriate behaviors during the visits and provided the minors with snacks, drinks, and toys. She also inquired about the minors' well-being with their caseworker and participated in child and family team meetings.

¶ 19    After considering the evidence and arguments presented, the trial court found respondent was an unfit parent for the reasons alleged in the State's petitions. As for the unfitness allegations based upon respondent's failure to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare, the court noted, "while she has shown some interest and concern as to her children's welfare, she failed to maintain a reasonable degree of responsibility as to [their] welfare."

¶ 20                        D. Best-Interest Hearing

¶ 21    In November 2024, the trial court held a best-interest hearing. The court took judicial notice of the evidence from the fitness hearing, received multiple exhibits and a best-interest report, and heard testimony from a caseworker and an account from a guardian *ad litem* (GAL). The following is gleaned from the evidence as it relates to respondent.

¶ 22    The minors, who were four and two years old at the time of the hearing, had been together in their current placement, which was a traditional foster home, since June 2024. The minors were doing well in their placement, and they referred to their foster parents as "Mom" and "Dad." The minors were involved in family activities with their foster parents, including activities with extended family. The foster parents ensured the minors attended all necessary appointments and followed any recommended treatment for their health and developmental issues. The minors' caseworker had no concerns with the ability of the foster parents to care for the minors. The foster

parents were willing to provide the minors with permanency through adoption. The foster parents were also willing to allow contact between the minors and their newborn sibling, who was in the care of their biological grandmother, if they were adopted.

¶ 23 Respondent, who loves and cares for the minors, desired for them to be returned to her care. Respondent had not completed the recommended services. She was discharged from counseling in August 2024 due to a lack of attendance. In October 2024, she reported residing at a shelter, and she gave birth to the minors' sibling, who has the same father as the minors. The psychological evaluation and parenting capacity assessment report, which was completed in April 2024, noted respondent acknowledged harming the minors' father but mitigated her behavior by stating she was frustrated with him for not contributing to the family. The report further noted respondent remained at risk of repeating aggressive behavior, as she had not appeared to have overcome her past trauma. The author of the report opined respondent could not in a reasonable time frame develop adequate skills for the safe return of the minors to her care because of her long-standing mental-health concerns and failure to learn from her past behaviors. The minors' caseworker noted she had not heard the minors speak about respondent during her visits to the foster home.

¶ 24 The minors' caseworker and the GAL believed it would be in the minors' best interest to terminate respondent's parental rights. Respondent disagreed.

¶ 25 After considering the evidence and arguments presented, as well as the statutory best-interest factors, the trial court found it would be in the minors' best interest to terminate respondent's parental rights. The court entered written orders terminating respondent's parental rights to each of the minors.

¶ 26 E. Notices of Appeal and Appointment of Appellate Counsel

¶ 27    Respondent filed timely notices of appeal in each of the minors' cases. Thereafter, the trial court appointed appellate counsel to represent respondent.

¶ 28    This consolidated appeal followed.

¶ 29                    II. ANALYSIS

¶ 30    On appeal, respondent's appellate counsel moves to withdraw as counsel on the ground no issue of arguable merit can be raised. See *In re S.M.*, 314 Ill. App. 3d 682, 686-87 (2000) (holding *Anders* applies to parental rights cases). Appellate counsel supported his motion with a brief identifying potential issues and explaining why he believes they would be frivolous. Notice of the motion to withdraw was given to respondent. Respondent has not filed a response to counsel's motion.

¶ 31                    A. Unfitness Finding

¶ 32    Appellate counsel indicates he considered contesting the trial court's unfitness finding but concluded any argument in support thereof would be frivolous. Specifically, counsel concluded any argument challenging the court's unfitness finding based upon respondent's failure to make reasonable progress toward the return of the minors to her care would be without merit.

¶ 33    In a proceeding to terminate parental rights, the State must prove parental unfitness by clear and convincing evidence. *In re N.G.*, 2018 IL 121939, ¶ 28. A trial court's finding of parental unfitness will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Id.* ¶ 29. A finding is against the manifest weight of the evidence "only where the opposite conclusion is clearly apparent." *Id.*

¶ 34    Section 1(D)(m)(ii) of the Adoption Act (750 ILCS 50/1(D)(m)(ii) (West 2022)) provides, in pertinent part, a parent will be considered an "unfit person" if he or she fails "to make reasonable progress toward the return of the child to the parent during any [nine]-month period

following the adjudication of neglected." "Reasonable progress" has been defined as "demonstrable movement toward the goal of reunification." (Internal quotation marks omitted.) *In re C.N.*, 196 Ill. 2d 181, 211 (2001). The benchmark for measuring a parent's progress toward reunification

> "encompasses the parent's compliance with the service plans and the court's directives, in light of the condition which gave rise to the removal of the child, and in light of other conditions which later become known and which would prevent the court from returning custody of the child to the parent." *Id.* at 216-17.

This court has stated a parent has made reasonable progress when "the progress being made by a parent to comply with directives given for the return of the child is sufficiently demonstrable and of such a quality that the [trial] court, in the *near future*, will be able to order the child returned to parental custody." (Emphasis in original.) *In re L.L.S.*, 218 Ill. App. 3d 444, 461 (1991).

¶ 35 In this case, the minors were taken into DCFS care based, in part, upon the risk of harm posed to them by respondent's domestic violence against the minors' father. As a result, it was recommended respondent (1) complete a domestic-violence assessment and comply with any recommended treatment, (2) complete a mental-health assessment and comply with any recommended treatment, and (3) complete a parenting education course. During the first period identified in the State's petitions to terminate parental rights, June 26, 2023, through March 26, 2024, respondent made minimal progress toward completing these services and continued to engage in an unhealthy relationship with the minors' father. We note respondent's incarceration does not excuse her failure to make reasonable progress. See *In re J.L.*, 236 Ill. 2d 329, 341 (2010) ("[T]ime spent in prison does not toll the nine-month period."). Given respondent's minimal progress during the first identified period in the State's petitions, we agree any argument contesting

the court's unfitness finding would be frivolous. See *In re Z.M.*, 2019 IL App (3d) 180424, ¶ 70 (stating only one ground for a finding of unfitness is necessary to uphold a finding of parental unfitness).

¶ 36                                              B. Best-Interest Findings

¶ 37        Appellate counsel indicates he also considered contesting the trial court's best-interest findings but concluded any argument in support thereof would be frivolous.

¶ 38        In a proceeding to terminate parental rights, the State must prove termination is in the child's best interest by a preponderance of the evidence. *In re D.T.*, 212 Ill. 2d 347, 367 (2004). A trial court's best-interest finding will not be disturbed on appeal unless it is against the manifest weight of the evidence. *In re Anaya J.G.*, 403 Ill. App. 3d 875, 883 (2010). Again, a finding is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Id.*

¶ 39        When considering whether termination of parental rights would be in a child's best interest, the trial court must consider several statutory factors within the context of the child's age and developmental needs. See 705 ILCS 405/1-3(4.05) (West 2022). The focus is on the child, and the parent's interest in maintaining the parent-child relationship must yield to the child's interest in a stable, loving home life. *D.T.*, 212 Ill. 2d at 364.

¶ 40        In this case, the minors, who were four and two years old at the time of the best-interest hearing, were together in an adoptive foster placement, where their needs were being met. The placement provided the minors with permanency and stability. Conversely, respondent had not completed the recommended services to be able to adequately care for the minors. Ultimately, the minors' needs for permanency and stability support the trial court's best-interest findings. We, therefore, agree any argument contesting the court's best-interest findings would be

frivolous.

¶ 41                                III. CONCLUSION

¶ 42          Because the record reveals no issue of arguable merit can be raised on appeal, we

grant appellate counsel's motion to withdraw and affirm the trial court's judgments.

¶ 43          Affirmed.